ROSA K. HIRJI | SBN 204722
   *rosa@rkhlawoffice.com*
JENNY CHAU | SBN 274360
   *jenny@rkhlawoffice.com*
ALEXANDER RODRIGUEZ | SBN 322700
   *alex@rkhlawoffice.com*
**LAW OFFICES OF HIRJI & CHAU, LLP**
5173 Overland Avenue
Culver City, CA  90230
Tel. (310) 391-0330 // Fax (310) 943-0311

*Attorneys for Plaintiffs* P.A., ROGER ASMAR
*and* MARLIN NICOGHOSSIAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.A., a minor, by and through her Guardian ad Litem, ROGER ASMAR, ROGER ASMAR, and MARLIN NICOGHOSSIAN,<br><br>                 Plaintiffs,<br><br>v.<br><br>GLENDALE UNIFIED SCHOOL DISTRICT, a public entity; MAXIM HEALTHCARE SERVICES, INC.; a corporation; and DOES 1 through 10, inclusive,<br><br>                 Defendants. | Case No.: 2:21-cv-01101<br><br><br>**COMPLAINT**<br><br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

     Plaintiffs bring this action to recover monetary damages for injuries suffered as a consequence of defendants' violations of federal disability antidiscrimination laws and California state laws.

     In support of this Complaint (the "Complaint"), Plaintiffs allege as follows:

//

1

## JURISDICTION AND VENUE

2      1.     This Court has jurisdiction over the subject matter of this Complaint

3  pursuant to 28 U.S.C. §§ 1331 and 1343, in that the Complaint asserts

4  violations of the Americans With Disabilities Act (42 U.S.C. 12181 et seq.; the

5  "ADA"), and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794.

6  The same actions and omissions that form the basis of Plaintiffs' federal

7  claims, form the basis of Plaintiffs' claims under California state law.

8  Accordingly, this Court has supplemental jurisdiction over Plaintiffs' state law

9  claims pursuant to 28 U.S.C. §1367.

10      2.     This Court is the proper venue for this action pursuant to 20 U.S.C.

11  § 1391(b), in that (1) Defendants operate and perform their official

12  duties/business within the County of Los Angeles, State of California and thus

13  reside therein, and (2) all of the events alleged in this complaint took place

14  within the County of Los Angeles, State of California.

15

16

## GOVERNMENT CLAIM REQUIREMENTS

17      3.     On April 27, 2020, Plaintiff filed an administrative claim pursuant to

18  California Government Code § 910 et seq. with the Glendale Unified School

19  District notifying Defendants of claims that are now set forth herein.

20      4.     Defendant Glendale Unified School District failed to reply to

21  Plaintiff's claim and, by operation of law, the claim was denied on June 11,

22  2020.

23      5.     Plaintiff has thus complied with the requirements of Government

24  Code Section 910, et. seq.

25

26

## PARTIES

27      6.     Plaintiff P.A. is an unemancipated minor presently residing in the

28  Glendale, County of Los Angeles, State of California. She brings this action by

---

**2**
**COMPLAINT**

1   and through her father, ROGER ASMAR, who will seek this Court's
2   appointment as Guardian Ad Litem upon filing this Complaint.

3       7.      Plaintiff ROGER ASMAR ("ASMAR", collectively with P.A. and
4   Nicoghossian, "Plaintiffs") is a natural person presently residing in the City of
5   Glendale, County of Los Angeles, State of California.

6       8.      Plaintiff MARLIN NICOGHOSSIAN ("NICOGHOSSIAN",
7   collectively with P.A. and Asmar, "Plaintiffs") is a natural person presently
8   residing in the City of Glendale, County of Los Angeles, State of California.

9       9.      Defendant GLENDALE UNIFIED SCHOOL DISTRICT ("District")
10  is, and at all times pertinent to this Complaint has been, a unified school
11  district as defined in Cal. Educ. Code § 83. Its territorial jurisdiction lies
12  within the County of Los Angeles, State of California.

13      10.     Defendant MAXIM HEALTHCARE SERVICES, INC ("Maxim") is
14  a corporation. Plaintiffs are informed and believe, and on the basis of such
15  information and belief allege, that Maxim presently maintains an office and
16  conducts business within the County of Los Angeles.

17      11.     Plaintiffs are ignorant of the true names of defendants DOES 1
18  through 10, inclusive ("Doe Defendants", collectively with District and
19  Maxim, "Defendants") and therefore sue those defendants by such fictitious
20  names. Plaintiffs will seek leave of court to amend this Complaint to allege
21  said defendants' true names and capacities as soon as Plaintiffs ascertain them.
22  Plaintiffs are informed and believe, and on the basis of such information and
23  belief allege, (1) that at all times herein mentioned the Doe Defendants were,
24  and each of them was, acting as a principal or as the duly authorized agent
25  and/or employee of each of the other defendants; (2) that all acts and things
26  herein alleged to have been done by the Doe Defendants were done on their
27  own behalf and/or on behalf of each other defendant; and (3) that said acts
28  were within the course and scope of such agency or employment.

## FACTUAL ALLEGATIONS

12.     P.A is a 10-year-old child who is diagnosed with Autism Spectrum Disorder and a Language Disorder. P.A.'s disabilities manifested in difficulties with social communication, restricted interests and repetitive behavior, and difficulties with expressive, receptive and pragmatic language. P.A. requires substantial behavior therapy to regulate her behaviors.

13.     ASMAR presently is, and at all times pertinent to this Complaint has been, P.A.'s father. NICOGHOSSIAN presently is, and at all times pertinent to this Complaint has been, P.A.'s mother. ("ASMAR" and "NICOGHOSSIAN", collectively "Parents").

14.     P.A. entered Abraham Lincoln Elementary School within the Glendale Unified School District in 2015 and attended the school until October 28, 2019, when District staff called the police and had her removed.

15.     In 2015 and 2018, the District conducted assessments and found P.A. to be a child with Autism and Language Impairments, requiring substantial support for her behavior. Throughout her time at Abraham Lincoln Elementary School, P.A. attended a special classroom for students with disabilities.

16.     Since 2016, P.A. has received the benefit of Applied Behavior Analysis ("ABA"), an Autism specific behavior therapy in the home. P.A. was referred for ABA therapy by the Regional Center, a program of the California Department of Developmental Services. P.A.'s behaviors were and are actively regulated when she is provided with ABA. Furthermore, P.A.'s ABA providers use behavior management to keep her safe.

17.     From the start of the 2018-2019 school year, if not earlier, District was on notice that P.A. required Autism specific behavior therapy in order to regulate P.A.'s behaviors, and behavior management to maintain her safety. She requires both to access the benefits of her school environment. The District was also on notice that P.A. received ABA services in the home with

1    great success.

2        18.    Starting in the 2018-2019 school year through October 28, 2019,

3    P.A.'s behaviors at home were significantly different from what District

4    employees described to her Parents.

5        19.    Beginning in P.A.'s 3rd grade year, in 2018-2019 school year and

6    continuing until January 2020, instead of managing her behaviors at school,

7    District employees began to send P.A. home regularly and suspended her

8    during the school day.  Additionally, P.A's classroom teachers sent P.A. out of

9    the classroom on a regular basis. These actions caused P.A. to miss a

10   substantial amount of school.

11       20.    On December 14, 2018, District represented to Parents that it would

12   provide behavior intervention services to P.A. Parents placed District on notice

13   that P.A. required Autism specific behavior therapy and behavior management

14   by trained and qualified individuals.  Despite this, District implemented

15   generic behavior intervention services.

16       21.    Between December 2018 and February 2019, District provided a one-

17   to-one aide to P.A. However, the one-to-one aide was not consistent and failed

18   to utilize Autism specific behavior therapy.  Despite the provision of the one-

19   to-one aide, P.A. behaviors were not regulated, causing her distress and

20   frustration.

21       22.    On or about February 7, 2019, the District informed Parents that it

22   wished to remove P.A. from the public school and place her in a nonpublic

23   school for children with disabilities. However, Parents requested Autism

24   specific behavior therapy at school and behavior management by trained and

25   qualified individuals.

26       23.    At some time between February and April 2019, District assigned two

27   aides to P.A. without the consent of Parents. When District informed Parents

28   about the two aides on or about April 8, 2019, it rationalized it as necessary to

---

**5**
**COMPLAINT**

ensure the safety of others. Parents again requested that District implement Autism specific behavior intervention and behavior management by trained and qualified individuals. Parents did not agree with the need for two-on-one intervention.

24.     Around February or March 2019, District contracted with Defendant MAXIM to provide generic, two-on-one, behavior intervention services for P.A. ("Maxim Aides").

25.     Despite now assigning two aides to P.A., District did not ensure the use of Autism specific behavior therapy to assist P.A. with regulating her behaviors and did not implement appropriate behavior management to ensure her safety. The Maxim Aides restricted P.A.'s movement and interaction with others, denied her access to her educational environment, failed to ensure her safety and caused a dysregulation and escalation of P.A.'s behaviors. The failure to regulate and manage P.A.'s behaviors using Autism specific methods caused P.A. significant emotional distress.

26.     P.A.'s emotional distress was a consequence of the failure of District and MAXIM to regulate and manage her behaviors.

27.     Despite being assigned two aides, P.A.'s suspensions increased, and she was sent home on a more frequent basis. The District banned P.A. from attending field trips and holiday celebrations.

28.     P.A. began to exhibit trauma related symptoms at school such as urinating in her pants. P.A., having limited language to express herself, used behavior to communicate her distress.

29.     On or about April 8, 2019 and June 6, 2019, the District again informed Parents of its desire to remove P.A. from the general education campus. District disagreed with Parents that P.A's behaviors could be regulated through Autism specific behavior therapy, even though it had not attempted it, and insisted on a nonpublic school.

30.     Parents disagreed with the offered nonpublic school because, after observing it, Parents determined that the behaviors of the other students were more severe than P.A.'s and would not be appropriate for her. P.A. remained enrolled at Lincoln Elementary School because Parents did not agree with the choice of the nonpublic school offered by the District.

31.     At the beginning of P.A.'s 4th grade in the 2019-2020 school year District employees continued to suspend and send P.A. home for behavioral incidents, despite the assignment of Maxim Aides. Parents requested the District conduct a behavioral assessment. At the same time, Parents began investigating other schools for P.A.

32.     On or about October 23, 2019, the District's behavioral assessment described P.A. as exhibiting physical aggression towards adults and peers, and that P.A.'s negative behaviors had increased over the last two years. The District failed to assess whether the method of behavior intervention utilized by the Maxim Aides was causing escalated behavioral and emotional responses, and whether it was effective at maintaining P.A.'s safety. District did not consider the use of behavior management techniques to prevent P.A. from expressing unsafe behaviors.

33.     On or about October 23, 2019 Parents notified District of their intent to have their home-based ABA provider observe P.A. at school to determine the cause of the change in her behaviors and to review the behavior intervention utilized by the Maxim Aides.

34.     On or about October 25, 2019, Parents were summoned by the school principal and informed that Maxim Aides had reported that P.A. was putting her hands on her privates and then touching the Maxim Aides. Parents were asked to take P.A. home. Such a complaint had not been made before.

35.     On October 28, 2019, the same day that Parent's home-based ABA provider was scheduled to observe P.A. at school, the District called the police

1    and had P.A. removed from school.

2        36.    District staff and Maxim Aides reported to the police that on October

3    28, 2019, P.A. had a major mental crisis. They described her behavior as a

4    meltdown where she urinated on herself twice, threw objects in the restroom,

5    licked the walls, undressed and put soap on herself and in her genitals, and

6    threw toilet water on her aide. P.A. fell several times during this event, and

7    had bruises on her forearms and scratches on the back of her neck. District and

8    Maxim Aides implied in their report that P.A. was exhibiting hypersexual

9    behavior.

10       37.    On October 28, 2019, Defendants' failure to regulate and manage

11   P.A's behaviors to prevent unsafe behaviors, caused P.A. to experience a

12   crisis. Maxim Aides and District staff failed to act with reasonable care to

13   assist P.A. during this crisis, failed to intervene to deescalate P.A. and failed

14   to effectively intervene to ensure her physical and emotional safety during the

15   episode. As a result, P.A. lost control of her behavior and emotions, and was

16   allowed to engage in actions in the restroom that were harmful to her, causing

17   her to experience physical injury, significant distress and terror.

18       38.    A trained ABA provider would have been able to prevent, manage,

19   deescalate the behavior, and utilize appropriate nonviolent emergency

20   behavior management, if necessary.

21       39.    Instead, the District called Glendale Police Department and the Los

22   Angeles County Department of Mental Health ("DMH") to remove P.A. from

23   school. The District's actions caused the Department of Mental Health to make

24   a report to the Department of Children and Family Services ("DCFS"). P.A.

25   was transported to Olive View Hospital for a two-night hospitalization under a

26   5150 hold. District failed to notify P.A.'s parents that P.A. was transported to

27   the hospital until Parents went to pick her up from school that day.

28       40.    The involuntary hospitalization was terrifying to both P.A. and her

1    Parents.  P.A. was discharged with a recommendation to her Parents to
2    implement ABA therapy.

3        41.    On November 5, 2019, the District reported to Parents that they had
4    called police on October 28, 2019 due to P.A.'s alleged sexual behaviors. P.A.
5    had never before exhibited behaviors that were hypersexual. A DCFS
6    investigation cleared Parents. It is unknown to Plaintiffs whether DCFS
7    investigated school employees.

8        42.    After the October 28, 2019 incident, Parents feared for P.A.'s safety at
9    school. P.A.'s psychiatrist ordered that P.A. stay home due to psychological
10   and emotional necessity.

11       43.    Believing that they had no other option, Parents consented to P.A.'s
12   placement at a nonpublic school.  However, Parents advocated for a more
13   appropriate option than the one proposed by District and after a delay, District
14   agreed to a school that specialized in Autism treatment.

15       44.    As a consequence of the October 28, 2019 removal, P.A. was out of
16   school from until January 2020.

17

18                         **FIRST CLAIM FOR RELIEF**
19                       **REHABILITATION ACT VIOLATION**
20                    **by Plaintiff P.A. against all Defendants**

21       45.    Plaintiffs incorporate by this reference the allegations set forth above
22   in paragraphs 1 through 44, inclusive, as though set forth fully herein.

23       46.    At all times pertinent to this Complaint, P.A.'s disability has
24   substantially limited one or more of her major life activities, including her
25   abilities (1) to speak and communicate, (2) to learn, (3) to interact with others,
26   (4) to maintain concentration, and (5) to attend school. Accordingly, P.A.'s
27   impairments constitute a "disability" as defined in 42 U.S.C. § 12102(1).

28   //

1    47.    As a result of District's evaluations and notice from Parents, and

2  District's contract with MAXIM, Defendants, along with some of their

3  officials, employees and agents, knew or should have known, prior to the start

4  of the 2018-2019 school year and continuing through January 2020 that P.A.

5  had a disability within the meaning of 42 U.S.C. § 12102(1).

6    48.    By virtue of having a disability within the meaning of 42 U.S.C.

7  §12102(1), P.A. is, and at all times pertinent to this Complaint has been, an

8  "individual with a disability" as that term is defined in 29 U.S.C. § 705(20)(B).

9  Accordingly, P.A. is, and at all times pertinent to this Complaint has been,

10  entitled by virtue of 29 U.S.C. § 794(a) to rights, benefits and protections

11  provided under the Rehabilitation Act.

12    49.    At all times pertinent to this Complaint, District has been a "local

13  educational agency" as that term is defined in 20 U.S.C. § 7801(3)(A).

14  Plaintiffs are informed and believe, and on the basis of such information and

15  belief allege, that District received federal financial assistance during the

16  relevant time periods pertinent to this Complaint. Accordingly, District was

17  subject to the duties, requirements and obligations of the Rehabilitation Act

18  during the time periods pertinent to this Complaint by virtue of 29 U.S.C.

19  § 794(a) & (b)(2)(B).

20    50.    At all times pertinent to this Complaint, MAXIM has been a

21  "nonpublic agency" as that term is defined in California Education Code §

22  56035. Plaintiffs are informed and believe, and on the basis of such

23  information and belief allege, that MAXIM received federal financial

24  assistance during the relevant time periods pertinent to this Complaint through

25  its contract with District. Accordingly, MAXIM was a program or activity

26  within the meaning of the Rehabilitation Act and was subject to the duties,

27  requirements and obligations of the Rehabilitation Act during the time periods

28  pertinent to this Complaint by virtue of 29 U.S.C. § 794(a) & (b)(2)(B).

51. During the 2018-2019 school year, through October 28, 2019, District purported to provide related aids or services in the form of generic behavior intervention aides.

52. In order to have the same access to public school as nondisabled persons, P.A. in view of her disabilities required (1) Autism based behavior therapy to regulate her behavior and (2) behavior management for her safety. Beginning on or about the start of the 2018-2019 school year and continuing through October 28, 2019 Parents expressly and specifically requested the District to provide those aforementioned aids and services. District initially purported to provide behavior intervention, but eventually denied Parent's request for ABA therapy. Instead, it utilized inappropriate methods that exacerbated P.A.'s behaviors, caused her distress, and failed to maintain her safety. District continued the unsafe behavior interventions despite being on notice of their ineffectiveness. District did so with the actual intent of discriminating against P.A. on the basis of her disability, and/or with deliberate indifference to the existence of her disability as well as her disability-based needs and legal rights.

53. In failing to provide either those aforementioned aids and services Parents had requested for P.A., District violated 34 C.F.R. § 104.33(a) & (b) and effectively excluded P.A. from participation in, denied her the benefit of, and subjected her to discrimination under its programs and activities. The foregoing exclusion, denial and discrimination were done solely by reason of P.A.'s disability and therefore violated the Rehabilitation Act generally and 29 U.S.C. § 794(a) specifically.

54. While enrolled at Lincoln Elementary School, Defendants unilaterally and on various occasions removed P.A. from her classroom, school, school events and field trips due to her behaviors, even though Defendants had actual knowledge that the behaviors were a consequence of P.A.'s disabilities.

55.     On October 28, 2019, Defendants permitted P.A.'s behavior to become dysregulated to a point that it was unsafe to herself, failed to intervene to prevent P.A. from harming herself, and thereafter caused P.A. to be picked up by the police and placed in an involuntary hospitalization for two days.

56.     Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendants motivation in removing P.A. from school and causing the police to remove her was to escape the legal responsibilities, obligations and duties it owed P.A. on account of her disability under the Rehabilitation Act and other antidiscrimination laws, and to avoid the costs of compliance with those responsibilities, obligations and duties.

57.     In removing P.A. from school and having the police remove P.A. from school so as to escape the legal responsibilities, duties and obligations it owed P.A. on account of her disability, Defendants violated 34 C.F.R. §§ 104.4b(1)(i) and 104.33(a) and (d) and excluded P.A. from participation in, denied her the benefit of, and subjected her to discrimination under its programs and activities. The foregoing exclusion, denial and discrimination were done solely by reason of P.H.'s disability and therefore violated the Rehabilitation Act generally and 29 U.S.C. § 794(a) specifically.

58.     As the direct and proximate result of Defendants failure to provide those aforementioned aids and services, and causing P.A.'s removal from school,  P.A. (1) was physically injured, (2) suffered emotional distress such as behavioral and emotional dysregulation, an acute stress reaction and anxiety, (3) was deprived of public education throughout the relevant time period during the 2018-2019 school year through October 28, 2019, and (4) deprived from school altogether from October 28, 2019 until January 2020.

//

//

59.     The Rehabilitation Act entitles P.A. to recover compensatory damages for the foregoing injuries pursuant to 29 U.S.C. § 794a(a)(2) and 42 U.S.C. § 2000d-7(a)(2).

## SECOND CLAIM FOR RELIEF
## ADA TITLE II VIOLATION
### by Plaintiff P.A. against Defendant District

60.     Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 59, inclusive, as though set forth fully herein.

61.     At all times pertinent to this Complaint, P.A.'s has a mental impairment that substantially limits one or more of her major life activities, including her abilities to (1) speak and communicate, (2) to learn, (3) to interact with others, (4) to maintain concentration, and (5) to attend school. Accordingly, P.A.'s impairments constitute a "disability" as defined in 42 U.S.C. § 12131(2).

62.     As a result of District's evaluations and notice from Parents, District, along with some of its officials, employees and agents, knew or should have known, prior to the start of the 2018-2019 school year and continuing through January 2020 that P.A. had a disability within the meaning of 42 U.S.C. § 12102(1).

63.     By virtue of having a disability within the meaning of 42 U.S.C. §12102(1), P.A. is, and at all times pertinent to this Complaint has been, an "individual with a disability" as that term is defined in 42 U.S.C. §12131(2).

64.     At all times pertinent to this Complaint, District has been a "public entity" as that term is defined in 42 U.S.C. §12131(3). Plaintiffs are informed and believe, and on the basis of such information and belief allege, that District received federal financial assistance during the relevant time periods pertinent to this Complaint. Accordingly, District was subject to the duties,

requirements and obligations of the ADA during the time periods pertinent to this Complaint by virtue of 42 U.S.C. §12182(b)(1)(D) and(b)(2)(A)(ii).

65.     In failing to provide (1) Autism based behavior therapy to regulate her behavior and (2) behavior management for her safety, District violated 28 C.F.R. §35.130(b) and effectively excluded P.A. from participation in, denied her the benefit of, and subjected her to discrimination under its programs and activities. The foregoing exclusion, denial and discrimination were done solely by reason of P.A.'s disability and therefore violated the ADA generally and 42. U.S.C. §12132 specifically.

66.     In removing P.A. from school from the 2018-2019 school year through October 28, 2019, having the police remove P.A. from school on October 28, 2019 and effectively denying P.A. a school until January 2020, so as to escape the legal responsibilities, duties and obligations it owed P.A. on account of her disability, Defendants violated 28 C.F.R. §§ 35.130(b)(7)(i) and (vii) and excluded P.A. from participation in, denied her the benefit of, and subjected her to discrimination under its programs and activities. The foregoing exclusion, denial and discrimination were done solely by reason of P.H.'s disability and therefore violated the ADA generally and 29 U.S.C. § 42 U.S.C. § 12132 specifically.

67.     The ADA entitles P.A. to recover compensatory damages and damages as well as reasonable attorneys' fees and costs for the foregoing injuries pursuant to 42 U.S.C. §§ 12133, 12202 and 2000d–7(a)(2), and 29 U.S.C. § 794a(a)(2).

## THIRD CLAIM FOR RELIEF
## ADA VIOLATION—PROHIBITED RETALIATION
### by All Plaintiffs against Defendant District

68.     Plaintiffs incorporate by this reference the allegations set forth above

in paragraphs 1 through 67, as though fully set forth herein.

69.     Through the acts described in Paragraphs 22, 22, 23, 29, 30, 31, and 33, inclusive, ASMAR and NICOGHOSSIAN, engaged in protected activity to secure the rights of P.A. under the ADA by seeking ABA therapy from Defendant District, refusing to consent to a nonpublic school placement and requesting that their in home ABA provider observe the school based behavior intervention.

70.     On October 28, 2019, a couple days after Plaintiffs engaged in the aforementioned protective activities, Defendant took adverse action by calling Glendale Police Department and the Los Angeles County Department of Mental Health to remove P.A. from Lincoln, and assisting the government agencies in transportation P.A. to Olive View Hospital for a two-night hospitalization under a 5150 hold. Defendants actions resulted in Parents being investigated by DCFS, and having to hire legal representation to seek an appropriate NPS placement for fear of P.A.'s safety at Lincoln Elementary School. Prior to this incident, the District called Parents to pick up P.A. when her behaviors were beyond their control.

71.     Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendants' motivation in making the decision to call the Glendale Police Department and the Los Angeles County Department of Mental Health was in whole or in significant part to interfere with P.A. and Parent's exercise of P.A.'s rights under Title II of the ADA, to retaliate against them on account of having exercised those rights, to retaliate against ASMAR and NICOGHOSSIAN on account of having aided P.A. in exercising those rights and to discriminate against Plaintiffs for having opposed District acts made unlawful by Title II of the ADA.. Such interference, retaliation and discrimination itself violated Title V of the ADA by virtue of 42 U.S.C. § 12203(a) and (b).

72.     Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant DISTRICT in making the decision to call the Glendale Police Department and the Los Angeles County Department of Mental Health assist those government agencies in transportation P.A. to Olive View Hospital for a two-night hospitalization under a 5150 hold, acted with the actual and specific intent of interfering with the assertion of P.A.'s rights under Title II of the ADA and/or with deliberate indifference to Plaintiffs' rights under Title V of the ADA to be free of such interference and retaliation.

73.     By virtue of 42 U.S.C. §§ 12133, 12202, 12203(c) and 2000d–7(a)(2), and 29 U.S.C. § 794a(a)(2), the ADA entitles P.A., ASMAR, and NICOGHOSSIAN to recover compensatory damages for the injuries they suffered as the direct and proximate result of Defendants' decision to call the Glendale Police Department and the Los Angeles County Department of Mental Health and thereby resulting in the exclusion of P.A. from participating in any of its programs or receiving any of its services at Lincoln.

**FOURTH CLAIM FOR RELIEF**

**REHABILITATION ACT VIOLATION—PROHIBITED RETALIATION**

**by All Plaintiffs against Defendant District**

74.     Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 73, as though set forth fully herein.

75.     ASMAR and NICOGHOSSIAN engaged in protective activity as described in Paragraph 22, 22, 23, 29, 30, 31, and 33, inclusive.

76.     Defendant took a series of adverse actions as described in Paragraphs 35, 36, 39, 40, 41, and 70, inclusive, in direct response to the aforementioned protective activity, for the purpose of dismissing P.A. from Lincoln Elementary School.

77.     Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendants' motivation in making the foregoing decision was in whole or in significant part to interfere with P.A., ASMAR, and NICOGHOSSIAN's assertion of P.A.'s rights under the Rehabilitation Act and to retaliate against them for having asserted those rights. Such interference and retaliation itself violated the Rehabilitation Act by virtue of 29 U.S.C.§ 794a(2) and 34 C.F.R. §§ 104.61 and 100.7(e).

78.     Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendants, and each of them, in making the decision to call the Glendale Police Department and the Los Angeles County Department of Mental Health, acted with the actual and specific intent of interfering with the assertion of P.A.'s rights under the Rehabilitation Act and/or with deliberate indifference to Plaintiffs' rights under the Rehabilitation Act to be free of such interference and retaliation.

79.     By virtue of 29 U.S.C. § 794a(a)(2) and 42 U.S.C. § 2000d–7(a)(2), the Rehabilitation Act entitles P.A., ASMAR, and NICOGHOSSIAN to recover compensatory damages for the injuries they suffered as the direct and proximate result of Defendants' decision to call the Glendale Police Department and the Los Angeles County Department of Mental Health and thereby resulting in the exclusion of P.A. from participating in any of its programs or receiving any of its services at Lincoln.

**FIFTH CLAIM FOR RELIEF**

**NEGLIGENCE AND NEGLIGENT SUPERVISION**

**by Plaintiff P.A. against all Defendants**

80.     Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 79, as though set forth fully herein.

//

81.     Defendants DISTRICT and its employees, MAXIM and its employees, and Doe Defendants 1-10 owed P.A. a general duty to exercise reasonable care for her safety during school hours, as well as a corollary specific duty to supervise her at all times, while on school grounds, and use reasonable measures to protect her from foreseeable injury.

82.     Defendants DISTRICT and its employees, MAXIM and its employees, and Doe Defendant Defendants 1-10 had a special relationship with Plaintiff, which imposes independent affirmative duty of care owed by Defendants to Plaintiff.

83.     By virtue of her attendance at Lincoln Elementary School, from 2015 to October 28, 2019, Defendants DISTRICT, MAXIM, and Doe Defendants knew or should have known of P.A.'s disability and disability related behavior.

84.     Given her disabilities, Plaintiff P.A. was particular vulnerable, particularly from untrained and unsupervised staff, thus requiring Defendants to exercise a higher degree of vigilance than would be necessary for a student with no disabilities.

85.     Defendants DISTRICT and its employees, MAXIM and its employees, and Doe Defendants 1-10, breach their duties through their negligence in supervising and/or failing to supervise P.A., and thus causing a hostile educational environment at Lincoln Elementary School by, failing to train and instruct employees and contractors on behavior management including the use of safe emergency behavior interventions; failing to supervise its administrators, employees, and contractors in the use of behavior interventions; failing to ensure Plaintiff was provided with Autism specific behavior therapy while at school; failing to ensure Plaintiff's safety and well-being while she was attending school, and/or through their negligence in performing and/or failing to perform other acts, including but not limited to

their actions towards P.A.'s disability related behavior that resulted in emotional trauma and physical harm.

86.     Defendants DISTRICT and MAXIM, are vicariously and otherwise liable for the torts of their employees, including Doe Defendants 1-10, who were acting within the scope of their employment when they intentionally or negligently failed to train, supervise, discipline, or terminate employees who facilitated, encouraged, ordered, consented to, or engaged in the actions described herein.

87.     As a proximate and foreseeable result of the negligent performance of its duties, as described in Paragraphs 85 and 86, inclusive, Defendants subjected P.A. to humiliation, physical injury, anxiety, fear, and emotional trauma.

88.     By virtue of the negligence of Defendants and their employees, P.A. has suffered and/or will continue to suffer damages, including harm and severe emotional distress, in an amount to be proven at trial.

89.     In doing the things alleged in this Complaint, Defendants were guilty of oppression, malice, and/or fraud, entitling P.A. to recover punitive damages from Defendants.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENCE PER SE
### by Plaintiff P.A. against all Defendants

90.     Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 89, as though set forth fully herein.

91.     Under California Evidence Code §669(a), negligence is presumed where the defendant violates a statute, the violation directly and proximately causes the plaintiff's harm, the harm caused is of the kind the statute is designed to prevent, and the plaintiff is a member of the class of persons the

1   statute was designed to protect.

2      92.    At all times pertinent to this Complaint, Defendants DISTRICT and

3   its employees, MAXIM and its employees, and Doe Defendants 1-10 owed

4   P.A. a duty of care pursuant to California Education Code §56521.1(a), which

5   imposes upon Defendants a duty that emergency interventions may only be

6   used to control unpredictable, spontaneous behavior that poses clear and

7   present danger of serious physical harm to the individual with exceptional

8   needs, or others, and that cannot be immediately prevented by a response less

9   restrictive than the temporary application of a technique used to contain the

10   behavior. Defendants DISTRICT and its employees, MAXIM and its

11   employees, and Doe Defendants 1-10 have breached this duty as described in

12   Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive.

13      93.    At all times pertinent to this Complaint, Defendants DISTRICT and

14   its employees, MAXIM and its employees, and Doe Defendants 1-10 also

15   owed P.A. a right pursuant to California Education Code §49005.4, which an

16   educational provider may use seclusion or a behavioral restraint only to control

17   behavior that poses a clear and present danger of serious physical harm to the

18   pupil or others that cannot be immediately prevented by a response that is less

19   restrictive. Defendants DISTRICT and its employees, MAXIM and its

20   employees, and Doe Defendants 1-10 have breached this duty as described in

21   Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive.

22      94.    At all times pertinent to this Complaint, Defendants DISTRICT and

23   its employees, MAXIM and its employees, and Doe Defendants 1-10 also

24   owed P.A. a right pursuant to California Education Code §44807, which

25   imposes upon defendants a duty to not exceed the amount of physical control

26   over a pupil reasonably necessary to maintain order, or protect the health and

27   safety of pupils, or to maintain proper and appropriate conditions conducive to

28   learning. Defendants DISTRICT and its employees, MAXIM and its

employees, and Doe Defendants 1-10 have breached this duty as described in Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive.

95.   Defendants DISTRICT and its employees, MAXIM and its employees, and Doe Defendants 1-10 wrongfully authorized and consented to the use of, unsafe behavior interventions, and intentionally or negligently failed to take reasonable action to protected Plaintiff P.A. from foreseeable harm.

96.   Defendants DISTRICT and its employees, MAXIM and its employees, and Doe Defendants 1-10 engaged in the use of generic behavior intervention aides, when Plaintiff requested Autism based behavior therapy to regular her behavior and behavior management for her safety.

97.   Plaintiff P.A. has been diagnosed with Autism Spectrum Disorder and a Language Disorder. As such, Plaintiff is a member of the class of persons California Education Code §§56521(a), 49005.4, and 44807, were designed to protect.

98.   Plaintiff P.A. suffered physical harm and psychological and emotional trauma of the kind the statutes were intended to prevent.

99.   Under California Evidence Code §669(a), Defendants' breach of California Education Code §§56521(a), 49005.4, and 44807, gives rise to presumption of negligence.

100.   Defendants DISTRICT and MAXIM, are vicariously and otherwise liable for the torts of their employees, including Doe Defendants 1-10, who were acting within the scope of their employment when they intentionally or negligently failed to train, supervise, discipline, or terminate employees who facilitated, encouraged, ordered, consented to, or engage in the actions described herein.

101.   As a direct and proximate cause of Defendant's conduct, Plaintiff P.A. has suffered and/or will continue to suffer damages, including physical harm

1    and severe emotional distress, in an amount to be proven at trial.

2        102.    In doing the things alleged in this Complaint, Defendants were guilty

3    of oppression, malice, and/or fraud, entitling P.A. to recover punitive damages

4    from Defendants.

5

6    **SEVENTH CLAIM FOR RELIEF**

7    **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

8    **by Plaintiff P.A. against all Defendants**

9        103.    Plaintiffs incorporate by this reference the allegations set forth above

10   in paragraphs 1 through 102, as though set forth fully herein.

11       104.    All Defendants owed and owe a duty of care to use reasonable

12   measures to protect Plaintiff P.A. from foreseeable harm, as well as to provide

13   P.A. a safe learning environment in which the well-being of Plaintiff is

14   considered and protected.

15       105.    All Defendants through the California Education Code, and other

16   sources, were on notice of the harms associated with the use of inappropriate

17   behavior interventions on children with disabilities is likely to cause physical

18   harm and emotional trauma.

19       106.    Plaintiffs are informed and believe, and on the basis of such

20   information and belief allege, that beginning on or about the start of the 2018-

21   2019 school year and continuing through October 28, 2019, Defendants

22   utilized inappropriate behavior intervention methods that exacerbated P.A.'s

23   behaviors, caused her distress, and failed to maintain her safety.

24       107.    Plaintiffs are informed and believe, and on the basis of such

25   information and belief allege, that Defendants were responsible for Plaintiff

26   behaviors on October 28, 2019.

27       108.    Defendants DISTRICT and its employees, MAXIM and its

28   employees, and Doe Defendants 1-10 breached its duty of care by enabling,

facilitating, and promoting the use of inappropriate behavior management including the use of safe emergency behavior intervention services and/or inappropriate supervision of employees use of behavior interventions, while acting within the scope of their employment. Defendants knew or should have known of the abuse against Plaintiff P.A., but failed to take reasonable action to intervene as described in Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive.

109.    All Defendants breached their duty of care by facilitating and/or creating a traumatic educational environment in which Plaintiff P.A. in their care was exposed to and threatened by the inappropriate use of behavior management including the use of safe emergency behavior intervention services and/or inappropriate supervision of employees use of behavior interventions, thereby disregarding the rights of P.A. in their care to a safe and welcoming school premises.

110.    Defendants' conduct foreseeably caused Plaintiff P.A. to suffer emotional distress.

111.    As a direct and proximate result of Defendants' conduct, Plaintiff P.A. has suffered, and/or will continue to suffer, emotional distress, in an amount to be proven at trial.

112.    In doing the things alleged in this Complaint, Defendants were guilty of oppression, malice, and/or fraud, entitling P.A. to recover punitive damages from Defendants.

## EIGHTH CLAIM FOR RELIEF

## ASSAULT

### by Plaintiff P.A. against all Defendants

113.    Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 112, as though set forth fully herein.

//

1    114.    By Defendants DISTRICT and its employees, MAXIM and its

2    employees, and Doe Defendants 1-10, offensive physical contact on a regular

3    basis through the use of inappropriate behavior management including the use

4    of safe emergency behavior intervention services and/or inappropriate

5    supervision of employees use of behavior interventions as described in

6    Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive,

7    Defendants intended to cause Plaintiff P.A. reasonable apprehension of

8    imminent and harmful contact with his person.

9    115.    As a result of Defendants' act, Plaintiff reasonably believed and was

10   in fact, placed in great apprehension of imminent harmful and offensive

11   contact with her person as described in Paragraphs 19, 21, 25 through 28, 31,

12   32, 34, 36, 37, 39, 40, and 42, inclusive.

13   116.    Defendant DISTRICT and MAXIM is vicariously liable for the

14   negligence and intentional torts of its employees, while acting within the scope

15   of their employment. Specifically, Doe Defendants 1-10 intended to cause

16   Plaintiff P.A. reasonable apprehension of imminent and harmful contact

17   pursuant to policy and/or practice of using inappropriate behavior management

18   including the use of safe emergency behavior intervention services and/or

19   inappropriate supervision of employees use of behavior interventions.

20   117.    Defendants DISTRICT and MAXIM, are vicariously and otherwise

21   liable for the torts of their employees, including Doe Defendants 1-10, who

22   were acting within the scope of their employment when they intentionally or

23   negligently failed to train, supervise, discipline, or terminate employees who

24   facilitated, encouraged, ordered, consented to, or engage in the actions

25   described herein.

26   118.    Plaintiff P.A., through her parent and legal guardian, did not consent

27   to Defendants' actions as described in Paragraphs 15, 19 through 27, 29, 31,

28   32, 36 through 38, and 39, inclusive.

119.    Defendants conduct as described in Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive, caused Plaintiff to be apprehensive that Defendants would subject her to further intentional invasions of her right to be free form offensive and harmful contact and demonstrated that at all times material herein, Defendants had a present ability to subject her to an intentional offensive and harmful touching.

120.    As a direct and proximate result of Defendants' wrongful actions, Plaintiff P.A. has suffered and/or will continue to suffer damages, including physical harm and emotional distress, in an amount to be proven at trial.

121.    In doing the things alleged in this Complaint, Defendants were guilty of oppression, malice, and/or fraud, entitling P.A. to recover punitive damages from Defendants.

## NINTH CLAIM FOR RELIEF
## BATTERY
### by Plaintiff P.A. against all Defendants

122.    Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 121, as though set forth fully herein.

123.    Defendants DISTRCT and its employees, MAXIM and its employees, and Doe Defendants 1-10 subjected Plaintiff P.A. to offensive physical contact on a regular basis through the use of inappropriate behavior management including the use of safe emergency behavior intervention services and/or inappropriate supervision of employees use of behavior interventions, while acting within the scope of their employment as described in Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive.

124.    Defendants DISTRCT and its employees, MAXIM and its employees, and Doe Defendants 1-10 intended to harm and offend Plaintiff P.A. through the use of inappropriate behavior management including the use of safe

emergency behavior intervention services and/or inappropriate supervision of employees use of behavior interventions.

125.    Defendants DISTRCT and its employees, MAXIM and its employees, and Doe Defendants 1-10 intentionally and willfully disregarded Plaintiff P.A.'s right to be free of such offensive physical contact.

126.    Plaintiff P.A. was harmed by Defendants' conduct.

127.    A reasonable person in Plaintiff P.A.'s position would be harmed and offended by Defendants' conduct.

128.    Defendant DISTRICT and MAXIM is vicariously liable for the negligence and intentional torts of their employees, while acting within the scope of their employment. Specifically, Doe Defendants 1-10 subjected Plaintiff P.A. to harmful and offensive physical contact pursuant to policy and/or practice of using inappropriate behavior management including the use of safe emergency behavior intervention services and/or inappropriate supervision of employees use of behavior interventions.

129.    Defendants DISTRICT and MAXIM, are vicariously and otherwise liable for the torts of their employees, including Doe Defendants 1-10, who were acting within the scope of their employment when they intentionally or negligently failed to train, supervise, discipline, or terminate employees who facilitated, encouraged, ordered, consented to, or engage in the actions described herein.

130.    Plaintiff P.A., through her parent and legal guardian, did not consent to such harmful and offensive contact as described in Paragraphs 15, 19 through 27, 29, 31, 32, 36 through 38, and 39, inclusive.

131.    As a direct and proximate result of Defendants' wrongful actions, Plaintiff P.A. has suffered and/or will continue to suffer damages, including physical harm and emotional distress, in an amount to be proven at trial.

//

132.   In doing the things alleged in this Complaint, Defendants were guilty of oppression, malice, and/or fraud, entitling P.A. to recover punitive damages from Defendants.


## PRAYERS

WHEREFORE, Plaintiffs pray judgment as follows:


1.  ON THE FIRST, SECOND, THIRD, and FOURTH CLAIMS FOR RELIEF, for general damages and special damages according to proof;
2.  ON THE FIFTH, SIXTH, SEVENTH, EIGHTH, and NINTH CLAIM FOR RELIEF, for general, special and punitive damages according to proof;
3.  ON ALL CLAIMS FOR RELIEF, for reasonable attorney fees;
4.  For ordinary costs of litigation; and
5.  For such other and further relief as the Court may deem just and proper.



Respectfully submitted,

DATED: February 6, 2021          LAW OFFICES OF HIRJI & CHAU, LLP


_____
Rosa K. Hirji
Attorneys for Plaintiffs

1

### DEMAND FOR JURY TRIAL

2     Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to
3 Rule 38 of the Federal Rules of Civil Procedure.

4

5                                        Respectfully submitted,

6

7 DATED: February 6, 2021            LAW OFFICES OF HIRJI & CHAU, LLP

8

9

10     _____

11     Rosa K. Hirji
       Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28